**Barney Earl CRUTCHFIELD,**
**Petitioner-Appellee,**

v.

**Louie L. WAINWRIGHT, Jim Smith,**
**Respondents-Appellants.**

No. 84–3508.

United States Court of Appeals,
Eleventh Circuit.

Nov. 10, 1986.

Thomas H. Bateman, III, Dept. of Legal Affairs, Tallahassee, Fla., for respondents-appellants.

Gwendolyn Spivey, Tallahassee, Fla., for petitioner-appellee.

Before RONEY, Chief Judge, and GODBOLD, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK and EDMONDSON, Circuit Judges.

HATCHETT, Circuit Judge:

In this case, the en banc court decides the extent to which a trial court may instruct a criminal defendant not to confer with counsel during a recess which occurs during the defendant's testimony.

During Barney Earl Crutchfield's trial for armed robbery with a deadly weapon, the Florida trial judge instructed Crutchfield's counsel not to talk with him about his testimony:

THE COURT: All right. We're going to take a little break, Ladies and Gentlemen. We've been at it a little bit. And I see there's a sigh of relief on some faces? Over here. Do not discuss this case, please, while you're in the jury room. All right.

[WHEREUPON, THE JURY WAS REMOVED FROM THE JURY BOX.]

THE COURT: All right. Gentlemen, in view of the fact that this is going to be a very brief break, I direct that the lawyers for Mr. Crutchfield not to discuss his testimony with him during the course of this break.

After receiving this instruction, Crutchfield's counsel did not object, move for a mistrial, or ask to discuss with him non-testimonial aspects of the case. Crutchfield, who was on the witness stand at the time of the admonition, contends that this admonition constituted the first violation of his right to the assistance of counsel.

The length of the recess, which occurred near the end of Crutchfield's direct examination, is in dispute. The government contends that it was brief and routine. Crutchfield contends that it extended into a

two-hour lunch break. Because of the manner in which we resolve the issue, the length of the recess is rendered unimportant.

After the recess direct examination continued for a short period of time. During cross-examination, Crutchfield made statements which indicated that he had no reason to rob or steal because his father supplied his financial needs.[1] After soliciting this testimony, the trial court sent the jury out of the courtroom and the prosecutor sought permission to impeach Crutchfield through presentation of evidence that he had been convicted for burglary five years before. Holding that Crutchfield "opened the door" for this impeachment evidence, the trial court granted the prosecutor permission to impeach Crutchfield using the prior conviction evidence. Crutchfield, apparently realizing that the impeaching evidence would be presented to the jury, asked the court to speak with his counsel.

THE COURT: All right. Bring the jury in. Son, don't direct any statements to me. If you have anything, you speak to your lawyer.

CRUTCHFIELD: Can—can I speak with him?

THE COURT: But don't direct statements to me.

Later, just before the jury was returned to the jury box, the following colloquy occurred:

CRUTCHFIELD: Can I speak with him for a minute?

THE COURT: What did I just tell you?

CRUTCHFIELD: Yes sir.

Immediately following the jury's return to the courtroom, through cross-examination, the prosecution presented the damaging impeachment evidence. The jury convicted Crutchfield of the charges, and the judge sentenced him to forty-five years in prison, with jurisdiction retained over the first one-third of the term. Crutchfield contends that the court's statements, above quoted, constitute a second violation of his right to the assistance of counsel.

In a Per Curiam order, dated June 17, 1982, Florida's First District Court of Appeals affirmed Crutchfield's conviction. The state trial court denied Crutchfield's motion for collateral relief (3.850, Fla.R. Crim.P.), and the Florida appellate court affirmed the denial of rule 3.850 relief. *Crutchfield v. State*, 431 So.2d 244 (Fla. 1st DCA 1983). Petition for Rehearing was denied on June 3, 1983. In the rule 3.850 motion for collateral relief, Crutchfield raised the denial of assistance of counsel claim.[2]

---

**1.** Q. [Prosecutor] And your father has—I think you testified earlier your father has always given you whatever you need.
A. [Crutchfield] Whatever I've needed. Yes sir.
Q. [Prosecutor] Now, is the suggestion that you're making there is that—if I follow the—the logic to it—is that: I had all the money I needed from Dad; therefore, I wouldn't have to need it to rob the store? Is that what you're saying?
A. [Crutchfield] No sir. If—if I've ever—if I've ever needed anything of need, that was of need, and my father saw that it was of need, he would help me with it. But he always made me, you know, work for it and try to strive for it.
Q. [Prosecutor] Okay. We've had a lot of testimony about—that you've heard—that your father paid a hundred dollars down on your rent and this—you know, your financial needs. What does that have to do with this case? Can you explain that?
A. [Crutchfield] I've—I've never had—I've—I've never had to or would have ever robbed any place—for money.

Q. [Prosecutor] That's the point. Right? We went through all these financial needs that you had because your dad supplies you money; therefore, you didn't have to rob. Isn't that what you're saying?
A. [Crutchfield] Yes sir, I would never have to. Never would.

**2.** The Florida appellate court opinion stated:
Appellant's motion further asserts that "... this turned out to be a rather lengthy recess. The defendant was not permitted to speak with his lawyer for about two hours...."
*Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), held that an order preventing a criminal defendant from consulting with his counsel "about anything" during a 17 hour overnight recess, between direct and cross-exam, impinged the defendant's sixth amendment right to assistance to counsel. But *Geders* carefully noted that the case did not involve a limited prohibition during a brief routine recess during the trial day. Compare *McFadden v. State*, 424 So.2d 918

After exhausting state remedies, Crutchfield filed a Petition for Writ of Habeas Corpus in the United States District Court for the Northern District of Florida. Relying on *United States v. Conway*, 632 F.2d 641 (5th Cir. Unit B 1980), the district court granted the writ of habeas corpus based on the denial of assistance of counsel claim.

On appeal, a panel of this court held that *Conway* had been implicitly overruled; therefore, it reversed and remanded the case to the district court for a hearing on whether the constitutional violation amounted to harmless error. *Crutchfield v. Wainwright*, 772 F.2d 839 (11th Cir. 1985).

We took this case for full court consideration to determine the circumstances, if any, in which a prohibition against a criminal defendant/witness consulting with counsel during a recess constitutes a denial of assistance of counsel to the extent that the defendant is entitled to a new trial.

## CONTENTIONS

The appellant, state of Florida, contends that the district court erred in relying on *Conway*'s rule of per se reversal, and that the prejudice rules of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), state the correct standard of review.

Crutchfield contends that the district court correctly relied on *Conway* because *Strickland* and *Cronic* are not applicable to this situation, which involves a denial of assistance of counsel claim as opposed to the ineffective assistance of counsel claims presented in *Strickland* and *Cronic*. Crutchfield emphasizes that the case law of this circuit, the majority of circuits in the United States, and many of the states, mandates a per se reversal rule when assistance of counsel is denied at a critical stage of criminal proceedings.

## DISCUSSION

In resolving the issues presented in this case, it is helpful to review the law presently binding in the circuit. Our review begins with *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In *Geders*, the Supreme Court held that a trial court's order preventing a defendant from consulting with his counsel during a seventeen hour overnight recess between defendant's direct and cross-examination, based on the trial judge's conclusion that the order was necessary to avoid improper influence on defendant's testimony, deprived the defendant of his right to assistance of counsel guaranteed by the sixth amendment to the Constitution of the United States.

The Court was careful, however, to limit its holding:

> *United States v. Leighton*, 386 F.2d 822 (C.A.2 1967), on which the Court of Appeals relied, involved an embargo order preventing a defendant from consulting his attorney during a brief routine recess during the trial day, a matter we emphasize is not before us in this case.

*Geders*, 425 U.S. at 89 n. 2, 96 S.Ct. at 1336 n. 2, 47 L.Ed.2d at 600 n. 2 (citations omitted). Thus, the Court left undecided whether denial of the right of consultation between a criminal defendant and his counsel during a brief routine recess constitutes a violation of the defendant's sixth amendment rights.

Courts were quickly called upon to decide the issue left open in *Geders*. In *Conway*, our predecessor circuit, the former Fifth Circuit, held that to the extent that the goal of preventing improper coaching conflicts with a defendant's right to freely consult with counsel, the conflict must be resolved in favor of the right to assistance

(Fla. 4th DCA 1982). We conclude that in the context of the Rule 3.850 motion in the present case, the limited prohibition imposed does not warrant post-conviction relief.

and guidance of counsel.[3] Thus, after *Conway*, ordering a criminal defendant not to consult with counsel during court recesses, no matter how brief, violated the constitutional right to assistance of counsel guaranteed by the sixth amendment, and required reversal. *Conway*, 632 F.2d at 645.

In 1984, the *Conway* issue was first presented to the Eleventh Circuit in *United States v. Romano*, 736 F.2d 1432 (11th Cir.1984). Following *Conway*, we held that a district court's order that a defendant refrain from consulting with his counsel concerning testimony during an overnight recess, which extended for several days due to the defendant's hospitalization, constituted reversible error. In discussing controlling precedent, we stated:

> Contrary to the language in some of these cases from other circuits, this court appeared to conclude in *United States v. Conway*, that the *Geders* violation was reversible error without any reference to possible prejudice. At least no inquiry along the lines outlined above was made in the opinion in that case.

*Romano*, 736 F.2d at 1438. Thus, the latest case in this circuit followed *Conway*'s per se reversible error rule. Unfortunately, in dicta, we went on to state:

> *We need not decide whether the government might be able to demonstrate a lack of prejudice to the point of harmlessness in a given case.* Our review of the record before us indicates that the error in this case cannot be deemed harmless. [Emphasis supplied.]

*Romano*, 736 F.2d at 1438. The *Romano* court did not intend to suggest that a harmless error inquiry would always be required after finding a violation of the defendant's right to assistance of counsel. The court simply noted that the defendant in *Romano* was entitled to a new trial regardless of the standard employed. Consequently, at the time the panel decided this case, this circuit followed *Conway*'s per se reversal rule.

The *Crutchfield* panel, in holding that *Conway* had been implicitly overruled, relied on *United States v. Cronic* and *Strickland v. Washington*. In *Strickland*, the Supreme Court identified two components for a successful ineffective assistance of counsel claim: (1) counsel's representation must have fallen below "an objective standard of reasonableness," and (2) the defendant must have demonstrated a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2070, 80 L.Ed.2d at 693, 698.

In *Cronic*, the Supreme Court held that only when surrounding circumstances justify a presumption of ineffectiveness of counsel can a sixth amendment claim be sufficient without inquiry into counsel's actual performance.

The panel elaborated upon the relationship between *Strickland*, *Cronic*, and *Conway*, stating:

> The denial of access to counsel for seventeen hours in *Geders* was given as an example in *Cronic* of a case where prejudice could be presumed. [Citation omitted.] In citing *Geders* for this proposition, the Court indicated the previously unstated rationale of the *Geders* rule: that prejudice was so likely to result from the overnight denial of access to counsel as to make a specific inquiry superfluous. However, as this court held in *Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir.1984), presumed prejudice will be available in only a "very narrow spectrum of cases"; it therefore does not follow from the Supreme Court's citation of *Geders* that prejudice should be presumed in any instance of denial of access to counsel—regardless of how brief. Indeed, the Supreme Court in *Geders* viewed denial of access during brief routine recesses as a potentially distinct variety of case. This fact, coupled with the admonition of *Cronic* and *Strickland v. Washington* against the creation in this

---

*Crutchfield v. State,* 431 So.2d 244 (Fla. 1st DCA 1983) (footnote omitted).

3. See *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206 (1981).

area of broad categories of cases requiring automatic reversal, leads us to inquire as to whether *Conway* has been implicitly overruled.

*Crutchfield,* 772 F.2d at 842 (footnotes omitted).

Although the panel viewed *Strickland* and *Cronic* as implicitly overruling *Conway,* it did not consider the *Strickland* test for determining prejudice appropriate:

> Under *Strickland v. Washington,* the burden placed on a defendant to show prejudice in the typical case of ineffective assistance of counsel is a heavy one: he must show that, but for his counsel's errors, there is a reasonable probability that the proceeding would have had a different outcome. The apparent rationale for saddling the defendant with this burden is a balancing of the defendant's right to counsel against the need for finality of trials. The analogous rule in this situation would be to require a defendant to prove that, but for the denial of access to counsel, there is a reasonable probability that his trial would have had a different outcome.
>
> We believe that a completely analogous rule is inappropriate, however.... The more appropriate analogy is ... to cases where a clear constitutional violation exists, as, for example, in the case of improperly admitted evidence that has been obtained in violation of the Fourth Amendment. In those cases, the prosecution is given the burden of showing that an error is harmless beyond a reasonable doubt.

*Crutchfield,* 772 F.2d at 842–43 (citations omitted).

 Contrary to the panel, we conclude that *Strickland* and *Cronic* did not overrule or modify *Conway.* Although *Strickland* held as a general rule that an individual could prevail on a claim of ineffective assistance of counsel only on a showing that the insufficient representation affected the reliability of the trial, two factors counsel against our relying on *Strickland* in this situation. First, *Strickland* involved a claim of *ineffective* assistance of counsel; here, we are concerned with a claim of *denial* of assistance of counsel.

Second, as this court stated in *Chadwick v. Green,* 740 F.2d 897, 900 (11th Cir.1984): "In *Cronic,* the Court carved a narrow exception to [*Strickland*'s] general rule that a defendant must demonstrate prejudice: a showing of prejudice is not necessary if there are 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'"

In *Cronic,* the Supreme Court cited *Geders* as a case where constitutional error could be found without any showing of prejudice because the accused was denied assistance of counsel during a critical stage of the proceedings. *Cronic,* 466 U.S. at 659, n. 25, 104 S.Ct. at 2047, n. 25, 80 L.Ed.2d at 668, n. 25. Thus, the denial of assistance of counsel in *Geders* was deemed reversible error not due merely to the length of the denial, but also because it occurred at a critical stage of the proceedings.

When *Geders, Strickland,* and *Cronic* are considered, nothing indicates that the Supreme Court intended the *Strickland* rule, applicable to situations in which counsel performs below the required standard, to apply to situations where the state, the court, or the criminal justice system denies a defendant assistance of counsel. The language from *Chadwick,* above quoted, is convincing: denial of assistance of counsel constitutes reversible error. Therefore, we reaffirm the underlying rationale of *Conway* and *Romano* that any deprivation of assistance of counsel constitutes reversible error and necessitates a new trial. Our rule does not include a harmless error analysis. *Cronic* and *Strickland* make clear that "where actual or constructive denial of assistance of counsel occurs a per se rule of prejudice applies." *Chadwick,* 740 F.2d at 900 n. 3. The reasons for adopting such a rule are best expressed in *Cronic:*

> In our evaluation of that conclusion, we begin by recognizing that the right to

the effective assistance of counsel is recognized nòt for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.... There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that *a trial is unfair if the accused is denied counsel at a critical stage of his trial.* Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice was required in *Davis v. Alaska*, 415 U.S. 308, 39 L.Ed.2d 347, 94 S.Ct. 1105 (1974) because the petitioner had been "denied the right of effective cross-examination" which " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' "

466 U.S. 658–59, 104 S.Ct. 2046–47, 80 L.Ed.2d 667–68 (emphasis added).

The majority of the circuits that have announced rules for reviewing denial of assistance of counsel claims favor the per se rule. *United States v. Allen*, 542 F.2d 630 (4th Cir.1976), *cert. denied*, 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977) (per se rule applied prospectively); *United States v. Bryant*, 545 F.2d 1035 (6th Cir. 1976) (in absence of extraordinary circumstances, it is abuse of discretion and violation of right of defendant to assistance of counsel for a trial court to direct that de-

fendant have no communication with his counsel during criminal trial over a noon recess). Only one circuit applies a harmless error analysis to a prohibition of consultation during trial between a criminal defendant and his counsel. *United States v. DiLapi*, 651 F.2d 140 (2d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). The Third and Fourth Circuits hold that no deprivation occurs in the absence of an objection. *See Bailey v. Redman*, 657 F.2d 21 (3d Cir.1981), and *Stubbs v. Bordenkircher*, 689 F.2d 1205 (4th Cir.1982), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983).

■ As we noted above, Crutchfield's lawyers did not object, move for a mistrial, or ask to discuss testimonial or non-testimonial aspects of the case with him after the trial judge instructed them not to confer with Crutchfield. As to the first alleged violation, we are unable to find any evidence that Crutchfield's lawyers actually wanted to talk with him during the recess, or that Crutchfield desired to consult with his counsel. If the record reflected such a desire by either, we would find that the trial judge's admonition constituted reversible error. Because the trial record does not reflect—by objection, motion, or request—that Crutchfield and his counsel actually desired to confer during the recess, we find that Crutchfield was not deprived of the right to assistance of counsel within the meaning of the sixth amendment. Thus, we overrule *Conway* and *Romano* to the extent they hold that a denial of assistance of counsel is presumed whenever a trial judge instructs counsel not to confer with a defendant during a recess. We conclude that a defendant or the defendant's counsel must indicate, on the record, a desire to confer in order to preserve a deprivation of assistance of counsel claim.[4]

---

**4.** As to the second alleged denial of assistance of counsel, although the trial judge expressly instructed Crutchfield to address questions to his counsel, the record does not show that Crutchfield did so. Whether Crutchfield and his counsel did confer without the conference being not-

ed by the court reporter, we do not know. In light of this fact, we take the Crutchfield-judge exchange in the light most favorable to Crutchfield—he was uncertain about the judge's reply and did not consult with his counsel. His counsel was present, however, and had the ability to

We thus announce a rule that satisfies our concerns for the important constitutional right of assistance of counsel, provides for the orderly conduct of trials, and makes sense. The defendant must show that the prohibition actually prevented the opportunity to confer with counsel. *See Bailey v. Redman*, 657 F.2d 21 (3d Cir. 1981); *Stubbs v. Bordenkircher*, 689 F.2d 1205 (4th Cir.1982). Once the defendant makes the requisite showing, a new trial is warranted. *See United States v. Allen*, 542 F.2d 630 (4th Cir.1976) and *United States v. Bryant*, 545 F.2d 1035 (6th Cir. 1976).

Although this en banc court is charged with the ultimate responsibility of interpreting the federal Constitution, we are confident in the rule we adopt today because the per se rule is already in effect in several states, including two states in the Eleventh Circuit. Our rule, announced by this opinion, is the per se rule with the additional common sense requirement that the record reflect a desire to consult. Alabama applied the per se rule in *Payne v. State*, 421 So.2d 1303 (Ala.1982) and *Ashurst v. State*, 424 So.2d 691 (Ala.1982). Georgia law does not appear to involve a harmless error analysis. *Cook v. State*, 158 Ga.App. 389, 280 S.E.2d 409 (1981) (not definitive). Florida has wrestled with the per se versus harmless error rules and has reluctantly adopted the harmless error analysis. *See Bova v. State*, 410 So.2d 1343 (Fla.1982), and *Recinos v. State*, 420 So.2d 95 (Fla. 3d D.C.A. 1982).

Other states following the per se rule are Illinois: *People v. Noble*, 42 Ill.2d 425, 248 N.E.2d 96 (1969); District of Columbia: *Jackson v. United States*, 420 A.2d 1202 (D.C.1979); Mississippi: *Pendergraft v. State*, 191 So.2d 830 (Miss.1966), and *Tate v. State*, 192 So.2d 923 (Miss.1966); New York: *People v. Hagen*, 86 A.D.2d 617, 446 N.Y.S.2d 91 (1982, 2d Dept.); Pennsylvania: *Commonwealth v. Logan*, 456 Pa. 508, 325 A.2d 313 (1974), *Commonwealth v. Werner*, 214 A.2d 276 (1965), and *Commonwealth v. Barber*, 250 Pa.Super. 427, 378 A.2d 1011 (1977); and Rhode Island: *Mastracchio v. Houle*, 416 A.2d 116 (R.I.1980).

 We have explored the possibility that the instruction in this case, "don't talk about your testimony," is appropriate because it is narrowly tailored to prevent coaching. Coaching has come to mean improperly directing a witness's testimony in such a way as to have it conform with, conflict with, or supplement the testimony of other witnesses. We conclude that the trial court's solution to its concern about coaching could not take the form of an admonition against Crutchfield consulting with his counsel. We reach this conclusion for two reasons.

First, the *Geders* Court suggested a variety of ways to serve the purpose of sequestration "without placing a sustained barrier to communication between a defendant and his lawyer." 425 U.S. at 91, 96 S.Ct. at 1337, 47 L.Ed.2d at 601. *See United States v. Romano*, 736 F.2d 1432, 1437 (11th Cir.1984) (noting that *Geders* "did not indicate that a restricted prohibition against talking with a defendant about his testimony was a possibility"). The list of permissible measures cited in *Geders* excludes by implication a bar on consultation.[5]

Second, *Geders* explained that traditional concerns about coaching are less applicable to a criminal defendant than to other witnesses, because a defendant is present in the courtroom throughout all testimony. 425 U.S. at 88, 96 S.Ct. at 1335, 47 L.Ed.2d at 599.

The trial judge may insure that the trial proceedings are orderly, without *unneces-*

clarify any confusion that might have existed. Counsel, for whatever reason, apparently saw no need to intervene. Consequently, if consultation did not take place, we must assume that counsel's professional judgment was that consultation was unnecessary. We thus conclude, that even read favorably to Crutchfield, this exchange did not actually deprive Crutchfield of assistance of his counsel.

5. The Court suggested, as methods of combating coaching, skillful cross-examination and continuation of examination without interruption until the examination is completed.

*sary* interruptions and delays. Such rare right of restriction by a trial court when aimed only at insuring orderly procedures in the trial will receive our approval. We caution trial judges, however, that the discretion to limit consultation is very narrow.

Since the record in this case does not reflect a desire to consult or an objection to the trial court's admonition, the district court must be reversed.

We reverse the district court and vacate the order granting the writ. We remand for consideration the issue left undetermined by the district court: whether the trial court erred in permitting the state to bring out on cross-examination evidence of Crutchfield's prior criminal activity.

**VACATED and REMANDED for proceedings consistent with this opinion.**

TJOFLAT, Circuit Judge, specially concurring, in which RONEY, Chief Judge, and HILL, FAY and ANDERSON, Circuit Judges, join:

We are called upon in this habeas case to decide whether petitioner's sixth amendment right to the assistance of counsel was denied when the trial court instructed his attorneys "not to discuss his testimony with him" during a brief recess, and neither petitioner nor his counsel raised any objection. Because I find no denial of the assistance of counsel under these circumstances, I agree with the court that the district court's decision granting the petition for a writ of habeas corpus must be reversed. I write separately, however, because the plurality opinion written by Judge Hatchett (plurality) employs a convoluted and self-contradictory analysis that I cannot endorse.

I.

Barney Earl Crutchfield was tried for committing armed robbery with a deadly weapon and took the stand to testify on his own behalf. Near the end of his direct examination the court announced that a short break would be taken and instructed Crutchfield's counsel "not to discuss his testimony with him during the course of this break." Neither Crutchfield nor his attorneys [1] objected to this admonition, and at no time during the recess did they inform the court that they wished to confer. The length of the break is in dispute, with Crutchfield contending that it ballooned into a two-hour recess [2] and the State arguing that it was very brief and routine.[3]

Following the recess, Crutchfield's direct examination concluded and his cross-examination began. During cross-examination, Crutchfield testified that he would never have to commit robbery for money, because his father supplied him with whatever financial assistance he required. At this point, the prosecutor approached the bench and advised the court that he wished to impeach Crutchfield with evidence of a prior burglary conviction. The jury was excused from the courtroom while the court considered this evidentiary question. The court concluded that the impeachment evidence was admissible and the following exchange then took place:

THE COURT:

. . . .

All right. Bring the jury in.

Son, don't direct any statements to me. If you have anything, you speak to your lawyer.

[CRUTCHFIELD]: Can—can I speak with him?

THE COURT: But don't direct statements to me.

[CRUTCHFIELD]: Can I speak with him for a minute?

1. Petitioner was apparently represented by two lawyers at trial.

2. Although Crutchfield has, at one time, asserted that the brief recess stretched into a two-hour lunch recess, he now concedes that a lunch break took place prior to his taking the stand on the day in question.

3. The trial transcript recites only that a brief recess was taken. Because the district court concluded that *any* restriction on the ability to confer with counsel during *any* recess required issuance of the writ, it did not resolve the factual dispute over the duration of the recess.

THE COURT: What did I just tell you?

[CRUTCHFIELD]: Yes, sir.

The jury was brought back into the courtroom and cross-examination was concluded. The jury returned a verdict of guilty, and the court sentenced Crutchfield to a forty-five-year prison term, retaining jurisdiction over the first one-third of that term. The conviction was affirmed on direct appeal.[4] Crutchfield moved for collateral relief in state court, pursuant to Fla.R. Crim.P. 3.850, and the state trial court denied relief.[5] On appeal, the District Court of Appeal of Florida addressed only one of Crutchfield's claims in its opinion, that he was denied the assistance of counsel when the trial court instructed his attorney not to discuss his testimony with him during a recess, and summarily affirmed the trial court as to all other issues. *Crutchfield v. State*, 431 So.2d 244 (Fla.Dist.Ct.App.1983). As to the assistance of counsel claim, the court, distinguishing *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (order prohibiting any consultation with counsel during an overnight recess violated sixth amendment right of defendant), held that a limited prohibition on consultation during a brief routine recess did not deny Crutchfield his sixth amendment right to the assistance of counsel.

4. Crutchfield raised two issues in his direct appeal. He contended that the trial court erred in admitting evidence of his prior burglary conviction and erroneously retained jurisdiction over the first one-third of his sentence.

5. Crutchfield apparently raised the following five claims in his Rule 3.850 proceeding: (1) that his sentence violated the equal protection clause of the fourteenth amendment because it was more severe than that received by his codefendant; (2) that the evidence was insufficient to support his conviction; (3) that the trial court erred in denying a severance; (4) that the trial court denied him the assistance of counsel in violation of the sixth and fourteenth amendments by instructing his counsel not to discuss his testimony with him during a recess; and (5) that the trial court erred in admitting evidence of a prior burglary conviction. The record does not contain Crutchfield's Rule 3.850 motion, but his federal habeas petition and his submissions

Crutchfield then filed the instant petition seeking habeas relief, raising the same grounds asserted in his Rule 3.850 petition. The district court, relying on *United States v. Conway*, 632 F.2d 641 (5th Cir.1980) (*Geders* rule applicable to recess of *any* length),[6] held that the trial court denied petitioner his sixth amendment right to the assistance of counsel when it instructed his attorneys not to discuss his testimony with him during a recess.[7] A panel of this court concluded that a constitutional violation had taken place, but reversed and remanded the case for the district court to determine whether the error was harmless. *Crutchfield v. Wainwright*, 772 F.2d 839 (11th Cir.1985). We then granted Crutchfield's petition for rehearing en banc.

## II.

Petitioner has complained about two analytically separate alleged instances of deprivation of assistance of counsel. The first occurred during petitioner's direct examination, when the trial court instructed his counsel not to discuss his testimony with him during a break in the trial. The second occurred during cross-examination, at the conclusion of a conference out of the presence of the jury regarding the admissibility of evidence of a prior burglary conviction. These two instances are unrelated and must be assessed separately.

to this court state that the five claims noted above were raised in the Rule 3.850 proceeding. The State has not disputed this point, and, in its en banc brief, specifically states that all claims have been exhausted.

6. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7. The district court held that claims (1), (2), and (3), *see supra* note 5, were procedurally barred under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), because they could have been, but were not, raised on direct appeal. Petitioner has not appealed from this determination. Because the district court granted relief on claim (4), *see supra* note 5, it did not address claim (5).

## A.

The second incident is easily disposed of and I will therefore address it first. This incident occurred when, during petitioner's cross-examination, he testified that because his father supplied his financial needs, he would never have to commit robbery for money. The prosecutor sought to impeach petitioner with evidence of a prior burglary conviction, and the court excused the jury so that it could hear argument on the admissibility of the impeachment evidence. The court determined that the impeachment evidence was admissible, at which point petitioner indicated to the court that he wanted to speak with his attorney. Petitioner was told that he should not direct his statements to the court but should instead speak to his lawyer. The court then reiterated its instruction that petitioner not direct statements to it. Petitioner's attorneys witnessed this colloquy and said nothing. Neither petitioner nor his lawyers informed the court that they needed to consult about matters other than the impending resumption of petitioner's cross-examination.

It is readily apparent that no constitutional violation occurred on this occasion. As an initial matter, the court did not prohibit petitioner from consulting with his attorney. Petitioner was instructed not to address the court but to speak to his lawyer. He never attempted to do so, and his lawyers made no attempt to speak to him. More importantly, petitioner has no constitutional right to compel a break in the ongoing trial proceedings to speak with his attorney. *United States v. Vasquez,* 732 F.2d 846, 848 (11th Cir.1984) (per curiam). *Geders* and its progeny establish that, when a recess in a trial occurs, the Consti-

tution is violated, under certain circumstances, if the defendant is prohibited from consulting with counsel. These cases do not stand for the proposition that a defendant, having taken the stand, may compel a recess during his examination to consult with counsel. *See id.*

In this case, petitioner volunteered a self-serving statement during cross-examination that the prosecutor sought to impeach. The jury was excused while the court heard argument regarding the admissibility of the impeachment evidence. Having made its decision, the court instructed the bailiff to return the jury to the courtroom. No recess in the proceedings occurred. Petitioner had no constitutional right to compel the court to stop the proceedings so that he could confer with counsel.[8]

## B.

Petitioner's other allegation of error is that the court deprived him of his sixth amendment right to the assistance of counsel by instructing his attorneys not to discuss his testimony with him during a break that occurred toward the end of his direct examination. The beginning point for analyzing this claim is the Supreme Court's decision in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In *Geders,* the trial court took an overnight recess at the conclusion of the direct examination of the defendant. Over the vigorous objection of counsel, the court ordered the defendant not to talk to his counsel "about anything" during the overnight recess. The court was not persuaded by counsel's protestations that he needed to confer with his client about trial strate-

---

**8.** The plurality opinion, *ante* at 1109 n. 4, assumes that petitioner wished to consult with counsel on this occasion but did not do so, because of confusion over the trial judge's remarks. The plurality holds that no deprivation of petitioner's right to the assistance of counsel occurred, however, because his attorneys witnessed the colloquy and said nothing, exercising their professional judgment that consultation was unnecessary. This analysis misses the mark. If petitioner had the right to consult with counsel at that point in the proceedings, while on the stand during cross-examination,

his attorneys could not possibly have known about what he wished to consult. Accordingly, they lacked the information necessary to exercise their professional judgment and to "waive" petitioner's right to consult with counsel, which he was attempting to exercise. In my view, no constitutional error occurred during this incident, because (1) the trial judge did nothing to prevent consultation, and (2) petitioner had no constitutional right to compel the trial judge to declare a recess in the proceedings so that he could consult with counsel.

gy, including what witnesses to call the following day, and that he would not discuss the defendant's testimony or impending cross-examination, or improperly "coach" the defendant.

In an opinion explicitly limited to its facts, the Supreme Court held that the total ban on consultation during an overnight recess violated the defendant's sixth amendment right to the assistance of counsel and warranted reversal of the conviction. *Id.* at 91, 93 S.Ct. at 1337.[9] The Court emphasized that it was not deciding the constitutionality of an "embargo order preventing a defendant from consulting with his attorney during a brief routine recess during the trial day." *Id.* at 89 n. 2, 93 S.Ct. at 1336 n. 2. The Court recognized that the prevention of "coaching" was a valid concern, one in fact proscribed by ethical rules, but stated that such a goal could not be achieved at the expense of depriving a defendant of his sixth amendment right to counsel during a long overnight recess. *Id.* at 89–91, 93 S.Ct. at 1336–37.[10] The Court suggested that, in order to vindicate the legitimate interest of preventing coaching, a trial court could constitutionally continue the trial without recess in order to complete the defendant's testimony. *Id.* at 90–91, 93 S.Ct. at 1336.

The en banc court is now called upon to address an issue purposefully left unresolved in *Geders:* the degree to which a defendant's sixth amendment right to the assistance of counsel is implicated by a trial court's restriction on the ability to confer with counsel during a brief recess that does not extend overnight. Our resolution of this matter should be guided by certain established principles. The starting point is the sixth amendment's guarantee that a defendant is entitled to the assistance of counsel at all critical stages of the trial proceedings. *See United States v. Cronic*, 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 2047 & n. 25, 80 L.Ed.2d 657 (1984). This fundamental guarantee does not, however, entitle a defendant, once he takes the witness stand, to consult with counsel during the time that he is on the stand. A defendant certainly has no right to be "coached" in the midst of his testimony. The tension between these principles arises when it is necessary or desirable to interrupt the proceedings and take a recess during the defendant's testimony.

The extreme cases in this area should present little difficulty. In the *Geders* situation, where a complete and overnight ban on communication is imposed over strenuous objection, it is clear that the assistance of counsel has been denied. It can be presumed that the defendant was prejudiced by his inability to consult with counsel as to any matter for such a prolonged period of time.[11] On the other hand, if at a crucial point in the cross-examination of the defendant the trial judge is forced to stop the proceedings and attend to another matter for a minute or two, a restriction, on the defendant's ability to obtain the coaching of counsel to which he does not object, would appear to work no deprivation of the sixth amendment right to the assistance of counsel. Similarly, a narrowly-drawn instruction to counsel that, during a recess, he must scrupulously comply with his ethical obligations and refrain from engaging in coaching would also not seem to deny the assistance of counsel.[12]

---

**9.** *Geders* involved a direct appeal from a conviction in a federal case and did not arise in a habeas context.

**10.** I use the term "coaching" to refer to improper attempts to influence or shape the testimony of the witness. Such a tactic is proscribed by ethical rules and is a perversion of the truth-seeking process.

**11.** Indeed, requiring the defendant to prove prejudice would be unworkable. First, it would be very difficult for the defendant to show that the trial may have been altered had consultation been allowed. Second, such an inquiry would require that destructive inroads be forged into the attorney-client relationship.

**12.** In order to avoid invalidating a conviction in the least offensive of these types of cases, the panel in this case and one other circuit have attempted to accomodate the situation by concluding that a constitutional deprivation took place but that a harmless error analysis should be applied. *See United States v. DiLapi,* 651 F.2d 140, 147–49 (2d Cir.1981), *cert. denied,* 455

There appear to be four relevant factors to consider in assessing cases that fall between these extremes. First, the length of the recess is important. The *Geders* holding is limited to a recess that extends overnight and recognizes that the overnight break is typically a time of intense work when counsel and client frequently need to consult about trial strategy. Second, the degree of the restriction placed on attorney-client communication is material. An absolute ban on consultation, as in *Geders*, in effect deprives the defendant of counsel for the duration of the recess. On the other hand, an instruction against coaching or an admonition not to discuss the defendant's testimony may frequently be appropriate and does not prevent discussion of trial strategy and other relevant matters. Third, the point in the proceedings when the recess is taken has some relevance. The state has a greater interest in restricting communication to prevent coaching during the defendant's cross-examination than during his direct examination. Finally, whether the defendant or his counsel objected to the instruction and what was said if an objection was raised are highly probative of whether the defendant was deprived of a right to consult with counsel, which he sought to assert.

Turning to the facts of this case, petitioner's counsel asked the court, near the end of petitioner's direct examination, if he "could have just a minute," presumably to collect his thoughts and determine what further questioning he wished to pursue. At that point, petitioner's co-counsel asked the court if the attorneys could approach the bench. The court responded affirmatively, and a bench conference followed. At the conclusion of the conference the court announced that a "little break" would be taken and remarked that he noticed "a sigh of relief on some faces" in the jury box. The court directed that in view of the "very brief break," petitioner's lawyers should not discuss his testimony with him. Petitioner and his attorneys raised no objection to this procedure. During the duration of the recess, the court received no indication that petitioner or his counsel desired to consult. The obvious inference to be drawn is that petitioner and his counsel wished to have the short recess and did not mind the restriction on their ability to discuss his testimony. In any event, they considered it preferable to pressing on with the examination uninterrupted. If the court's instruction denied petitioner an important right that he wished to assert, it was incumbent upon him or his attorneys to bring the matter to the court's attention.[13] Similarly, the failure to raise the matter during the duration of the recess indicates that petitioner and his attorneys felt no need to consult at any point during that time. The complete failure to object is highly probative that no constitutional deprivation of the assistance of counsel occurred. *See Stubbs v. Bordenkircher*, 689 F.2d 1205, 1207 (4th Cir.1982), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983); *Bailey v. Redman*, 657 F.2d 21, 24 (3d Cir.1981) (per curiam), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 310 (1982). When viewed in combination with the relatively short recess and the limited

---

U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). I believe that a harmless error analysis is unworkable in a case such as this for several reasons. First, the prosecution has the burden of establishing that an error is harmless, *see Chapman v. California*, 386 U.S. 18, 22–26, 87 S.Ct. 824, 827–29, 17 L.Ed.2d 705 (1967); yet only petitioner and his counsel are in possession of the relevant material facts, i.e., what they would have discussed had they been allowed to consult. Further, as pointed out *supra*, note 11, such an inquiry is not subject to easy resolution and necessarily penetrates into the heart of the attorney-client relationship.

13. Given the interest at stake and the difficulty in probing the merits of an objection to a court-imposed restriction on consultation with counsel during a recess, *see supra* note 11, I would not impose a very onerous burden on a defendant who objects to such a restriction. In my view, very little showing would be necessary before the trial judge is required to allow the defendant to consult with counsel during a recess. If a defendant is not willing to be restricted in his communication with counsel during a recess and thus raises an objection, the trial court can consider whether to continue the examination without recess or to take a recess and allow unrestricted consultation.

admonition, merely directing counsel not to discuss petitioner's testimony with him,[14] I conclude that there has been no constitutional violation in this case.

In this appeal, petitioner contends that he failed to object because he was misled by the court's statement that the break would be brief. This argument implies, however, that neither petitioner nor his counsel had matters requiring consultation during a short break. Nor did the fact that the break became extended, if we accept petitioner's version of the facts, move petitioner or his counsel to ask the court for permission to consult.

Referring to the subsequent incident during petitioner's cross-examination, which is discussed in Part II.A., *supra*, petitioner alleges that he there made it clear to the court that he wished to talk with his attorney. He also claims that the denial of his right to consult with counsel during the break taken toward the end of his direct examination led to his impeachment on cross-examination, because he had information that he would have conveyed to counsel that would have prevented the admissibility of the impeachment evidence. Petitioner's arguments ignore the facts depicted in the record. It is clear that, until the time it became apparent that petitioner was about to be impeached with evidence of his prior burglary conviction, he had exhibited no inclination to consult with counsel. This episode, which is fully recounted in Part II.A., *supra*, simply had nothing to do with the prior recess taken during petitioner's direct examination, where the court instructed counsel not to discuss petitioner's testimony with him.

## III.

Although the plurality also concludes that the writ should not issue in this case, I cannot subscribe to the analysis it employs. The plurality analyzes the claim in question and concludes that *any* restriction on the ability to confer with counsel during *any* recess results in an unconstitutional deprivation of the assistance of counsel, requiring per se reversal on direct appeal, or per se issuance of the writ on habeas. Thus, at the time the trial judge utters the restrictive admonition, he commits error of constitutional magnitude in all instances.

The Supreme Court has instructed that "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic,* 466 U.S. at 667, 104 S.Ct. at 2046. The core concern is for the "reliability of the trial process" and "subject[ing] the prosecution's case to meaningful adversarial testing." *Id.* at 667–68, 104 S.Ct. at 2046–47. Under certain circumstances, constitutional error is patent, and the existence of undue prejudice is inherent and self-evident. In those cases, a per se violation is found without further inquiry. The complete denial of counsel is the most obvious example. *See Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963) (right to counsel necessary to insure fundamentally fair trial). In other per se cases, although the defendant has nominally been provided with or obtained counsel, circumstances are such that he has, in effect, been denied representation. *See Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980) (counsel

---

**14.** The trial judge in this case did not enact a complete ban on communication, but merely told counsel to avoid discussing petitioner's testimony with him. Although "not discussing testimony" may be broader than is an instruction against coaching, on the facts of this case I believe the court's instruction amounted to little more than an admonition to counsel to make certain that ethical standards were complied with during the recess.

The plurality states that it has "explored the possibility" that the instruction not to discuss testimony was appropriate because it was narrowly tailored to prevent coaching. It then recites that "the trial court's solution to its concern about coaching could not take the form of an admonition against Crutchfield consulting with his counsel." This statement is mystifying because the trial court did *not* admonish Crutchfield not to consult with his attorney; the court instructed Crutchfield's attorney not to discuss his *testimony* with him.

actively represented conflicting interests); *Powell v. Alabama,* 287 U.S. 45, 53, 56–58, 53 S.Ct. 55, 58–60, 77 L.Ed. 158 (1932) (indefinite appointment of all members of local bar to help defendant and no designation of specific counsel until just prior to trial, if at all). The plurality is, in effect, saying that the type of error claimed in this case presents a likelihood of prejudice equivalent to a case where the defendant suffers a complete denial of assistance of counsel. I cannot agree with the plurality's conclusion that in every instance where a trial judge restricts communication with counsel during a trial recess a per se constitutional violation results.

Despite its elevation of the claimed error in this case to the highest level of severity, the plurality then concludes that if the defendant or his attorney did not indicate a desire to confer, on the record, the error has not been preserved and is not cognizable in any subsequent federal proceeding.[15] The defendant, therefore, can forever waive a right akin to the right to be represented by counsel in the first instance and so fundamental as to justify a per se rule, without any indication that he was aware of the right or intended to waive it. This is a far cry from the presumption against waiver of fundamental rights imposed by the Supreme Court in the context of the sixth amendment right to counsel and from the requirement that a waiver be an "intentional relinquishment ... of a known right." *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). I find the logic of the plurality's approach inherently contradictory and unsatisfactory.

It would only make sense to adopt a per se rule of reversal in every recess situation involving a restriction on access to counsel if we are confident that all such instances are likely to result in a deprivation of constitutional magnitude. As the Supreme Court has stated, "[t]here are ... circum-

stances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic,* 466 U.S. at 667, 104 S.Ct. at 2046–47. *Geders* presented such a situation. The trial court, over vigorous objection, erected a lengthy, overnight ban on *any* consultation at a critical point in the proceedings. Prejudice was obvious. I would suggest that not every restriction on consultation during trial presents an equivalent likelihood of constitutional harm and justifies a per se rule of unconstitutionality. This case represents a prime example. The examination of the defendant had reached a point where all parties apparently concluded that a brief recess was desirable. The court told petitioner's counsel not to talk with his client about his testimony. This was apparently agreeable to all of the parties. Counsel's and petitioner's actions surely led the court to believe that they wanted to take a break and did not need to consult during the recess. It would be difficult to sustain an argument that petitioner suffered an obvious deprivation of the right to counsel such as was involved in the *Geders* case. In my view, a claim of this type should be analyzed under all of the relevant facts and circumstances, including the duration of the recess, when it occurred, the degree of restriction on consultation imposed by the trial judge, and whether the defendant or counsel objected to the restriction and what was said if an objection was raised.

One might argue that the plurality opinion at least has the virtue of fashioning an easy-to-apply, bright line rule. I believe that such clarity is illusory. The plurality opinion leaves unanswered several difficult questions and poses several potential problems.

First, the plurality's analysis would apply in the context of a direct criminal appeal in a federal case, as well as in a habeas

---

**15.** Under this approach, error of constitutional magnitude occurs when the trial judge announces the prohibition, but whether a constitutional claim exists depends upon the presence of some type of indication of a desire to confer.

The plurality, in a federal habeas case, thus engrafts its own contemporaneous objection, procedural bar rule to a state or federal trial proceeding.

proceeding challenging a state conviction. On direct appeal, the plain error rule applies. Fed.R.Crim.P. 52(b). Thus, the defendant's failure to object, or place on the record an indication that he wished to confer with his attorney, would be of no moment. Plain error is one that is " 'both obvious and substantial,' " and is more freely noticed in the case of constitutional errors. *United States v. Smith,* 700 F.2d 627, 633 (11th Cir.1983) (citations omitted). Under the plurality's characterization of the claim in this case as a per se constitutional error, I would suggest that, were this a direct criminal appeal, we would be required to notice the error and reverse the conviction, despite the fact that, in my view, no deprivation of the assistance of counsel occurred.[16]

Second, the plurality requires that a defendant make a contemporaneous objection as a prerequisite to claiming the deprivation of assistance of counsel. It is unclear whether this holding is limited to brief trial recesses during the day, or whether it extends to an overnight recess as in *Geders,* or even to a week-long recess. If it only applies to brief recesses during the day, I fail to glean the principle on which the plurality would rely for this distinction. Thus, if a trial judge enacts a complete ban on consultation with counsel during a week-long recess, and no objection is raised, the claim will not have been preserved.

Third, if during a brief recess, the trial court merely warns counsel to refrain from engaging in any unethical or illegal "coaching," and an objection is raised, has the trial judge committed constitutional error warranting habeas relief? The plurality seems to hold that a trial judge cannot

vindicate the valid interest in preventing coaching with an admonition that restricts, in any fashion, communication between the defendant and counsel, no matter how innocuous the instruction.

Finally, in its closing passages, *ante* at 1110–11, the plurality hints that trial judges have discretion, albeit very limited, to restrict consultation during recesses, even over an objection. This appears completely contrary to the holding of the opinion. In the same paragraph, the plurality states that trial judges may insure that proceedings are orderly, without unnecessary interruptions and delays. I have studied this paragraph and am at a loss to decipher exactly what guidance the plurality is providing the trial judges of both the state and federal courts.

### IV.

For the foregoing reasons, I would hold that petitioner was not deprived of his constitutional right to the assistance of counsel. I therefore concur in the court's decision to reverse the district court's grant of the writ of habeas corpus. I cannot agree, however, with the plurality's conclusion that a constitutional error occurred in this case, but is not cognizable, because it was not adequately preserved.

EDMONDSON, Circuit Judge, specially concurring:

In this case, the trial record does not show that the defendant and defense counsel actually desired to confer during the pertinent recess and would have conferred but for a restriction placed upon them by the trial judge. Consequently, the trial record in this case shows no deprivation of

---

**16.** Nor are the problems of the plurality's approach limited to direct criminal appeals. The following scenario is possible in a federal proceeding collaterally attacking a state or federal conviction. If, at trial, the judge restricts communication between the defendant and counsel during a recess, and no objection is raised, the defendant may allege, in a collateral attack, that his counsel was ineffective for failing to object. Given that, under the plurality holding, the trial judge committed a per se constitutional violation, it would be difficult to argue that

counsel's actions constituted reasonable performance. The question would then arise whether the defendant was prejudiced by counsel's ineffectiveness. Because the plurality holds that any deprivation of assistance of counsel requires a per se prejudice rule, it would appear that a valid claim of ineffectiveness has been established. Thus, although the defendant could not bring a *deprivation of* assistance of counsel claim, because of his failure to object, he may have a valid *ineffective* assistance of counsel claim.

defendant's right to counsel.[1] *See Bailey v. Redman,* 657 F.2d 21 (3d Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 310 (1982); *Stubbs v. Bordenkircher,* 689 F.2d 1205 (4th Cir.1982), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983). To the extent Judge Hatchett's opinion recognizes this, I agree with his opinion. I also concur in the judgment to reverse and to remand. I share, in part, the views expressed in Judge Tjoflat's concurring opinion, especially Part II.A.; but I speak for myself on two points.

### 1.

### THE PROBABILITY OF IMPROPER COUNSELING IS LOW, AND TRIAL COURTS OUGHT NOT INTERFERE WITH ATTORNEY–CLIENT COMMUNICATIONS DURING TRIAL RECESSES

If so-called "coaching" of witnesses means *improper* attempts to influence the testimony of a witness, I agree that "coaching" of defendants is a valid concern of trial judges; but such improper counseling seems rare. Consequently, concerns about "coaching", in general, cannot constitutionally support an order barring communication—even bearing on the defendant's testimony—between a defendant and his lawyer during brief, routine recesses during the trial day in criminal cases. *See generally Geders v. United States,* 425 U.S. 80, 93, 96 S.Ct. 1330, 1337–38, 47 L.Ed.2d 592, 602 (1976) (Marshall, J., concurring); *United States v. Conway,* 632 F.2d 641, 644 (5th Cir.1980); *United States v. Allen,* 542 F.2d 630, 633 (4th Cir.1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977).

At trial, defense counsel is the adversary of the government prosecutor; but absent clear evidence to the contrary, courts ought to assume that lawyers perform their duties ethically. While suggesting fraud or perjury is unethical,[2] there is nothing unethical or, otherwise, wrong with lawyers counseling their clients at every recess concerning the anticipated direction of the prosecutor's questions and the best manner in which the client can present the facts most favorably to the defense. To the contrary, such counseling is entirely proper.

In criminal cases, judicial orders barring defense attorney-client communications during brief, trial recesses violate the Constitution if that interference has a likely effect on the trial's outcome. Because such interference entails considerable risk of constitutional error, it is ill-advised and unseemly and ought to be avoided unless expressible, extraordinary circumstances justify it in each particular instance. Briefly stated, the cost outweighs the benefit.

### 2.

### PER SE REVERSALS ARE INAPPROPRIATE WHERE TRIAL COURTS INTERFERE WITH ATTORNEY–CLIENT COMMUNICATIONS DURING BRIEF TRIAL RECESSES

As indicated above, I am of the opinion that orders barring communications (even dealing with the defendant's testimony) between a criminal defendant and his lawyer during brief, routine trial recesses (including recesses during the cross-examination of the defendant) can violate the sixth amendment if the trial record shows that the lawyer or defendant actually wished to confer during that recess. I believe, however, that such constitutional violations occur very occasionally: not every interference of this sort with counsel's assistance results in a breakdown in the adversary

---

**1.** In light of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the actions of the State of Florida are governed by the sixth amendment right to counsel.

**2.** *See* ABA Model Rules of Professional Conduct, Rules 1.2(d), 3.3 & comment to Rule 1.2(d); ABA Model Code of Professional Responsibility Canon 7, DR 7–102(A)(4), (6), (7); Alabama Code of Professional Responsibility Canon 7, EC 7–26 & DR 7–102(A)(4), (6), (7); Florida Code of Professional Responsibility Canon 7, EC 7–26 & DR 7–102(A)(4), (6), (7); Georgia Code of Professional Responsibility Canon 7, EC 7–26 & DR 7–102(A)(4), (6), (7).

process that renders the trial's outcome unreliable. If there is no such breakdown, there has been no sixth amendment violation.[3] Although such a breakdown may be presumed in certain extreme circumstances, the facts and circumstances of most cases do not warrant such a presumption.

Accordingly, sixth amendment claims in the context of brief, routine recesses during the trial day ought to be subject to a requirement that the defendant affirmatively assert and demonstrate prejudice as a condition to post-conviction relief.[4] *See United States v. DiLapi,* 651 F.2d 140, 148–49 (2d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *State v. Perry,* 278 S.C. 490, 299 S.E.2d 324, 325–26 *cert. denied,* 461 U.S. 908, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983); *cf. Geders v. United States,* 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (interference with counsel by order not to consult with defendant during overnight recess denied right to the effective assistance of counsel). *See generally Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (usually sixth amendment claims require defendants to show prejudice); *United States v. Cronic,* 466 U.S. 648, 662 n. 31, 104 S.Ct. 2039, 2049 n. 31, 80 L.Ed.2d 657 (1984) (fact that accused can attribute deficiency in his representation to the court does not justify reversal absent an actual or likely effect on the trial process).

I disagree with those who think that this standard places an impossible burden on the defendant. Both the Supreme Court and this Circuit have already placed this burden on defendants alleging a myriad of constitutional violations. *See Morris v. Matthews,* — U.S. —, 106 S.Ct. 1032, 1038, 89 L.Ed.2d 187 (1986) (jeopardy barred conviction reduced to conviction for lesser included offense that is not jeopardy barred); *United States v. Bagley,* — U.S. —, 105 S.Ct. 3375, 3381, 3384, 87 L.Ed.2d 481 (1985) (evidence favorable to defendant withheld by government); *Wilson v. Kemp,* 777 F.2d 621, 623 (11th Cir.1985) (improper prosecutorial argument), *cert. denied,* — U.S. —, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986); *Stoner v. Graddick,* 751 F.2d 1535, 1546–47 (11th Cir.1985) (delay between crime and indictment).[5]

Neither am I convinced that this prejudice standard would infringe too much on attorney-client relations. To prove prejudice, truly privileged communications may be neither necessary nor relevant. Standing alone, the circumstances of the pertinent recess and pertinent order can establish prejudice. If in a particular case the circumstances (length of recess, restrictiveness of the order, the point in the trial at which the recess is taken, etc.) are, by themselves, not enough, the defendant seeking review may choose to disclose the intended nature of the barred communication. Even these are communications that never, in fact, occurred; and, thus, the usual attorney-client privilege rules hardly seem to control. Perhaps sometimes, how-

---

**3.** This is different from the concept of harmless federal constitutional error; thus, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), does not control.

**4.** I specifically note that this case comes to us as an appeal by a state prisoner from the denial of federal habeas corpus relief by the district court. In the words of Justice Harlan, "I therefore put aside all other types of cases; in so doing, however, I wish to make it perfectly clear that I am by no means prepared to say that the constitutional issue should ultimately turn upon the nature of the particular case involved." *Estes v. Texas,* 381 U.S. 532, 590, 85 S.Ct. 1628, 1663, 14 L.Ed.2d 543 (1965) (Harlan, J., concurring).

**5.** For other cases applying a prejudice standard, *see United States v. Valenzuela-Bernal,* 458 U.S. 858, 867–873, 102 S.Ct. 3440, 3446–49, 73 L.Ed.2d 1193 (1982) (government deportation of defendant's witnesses; defendant must show testimony would have been material and favorable); *United States v. Morrison,* 449 U.S. 361, 365–66, 101 S.Ct. 665, 668–69, 66 L.Ed.2d 564 (1981) (agent meeting with defendant without counsel's consent or presence; defendant must demonstrate at least threat of prejudice); *Busby v. Holt,* 771 F.2d 1461 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986), *opinion withdrawn in part,* 781 F.2d 1475, 1477 (11th Cir.1986) (prosecutor calling coindictee to testify, knowing that he would invoke fifth amendment privilege; defendant must prove prejudice).

ever, privileged communications may be relevant. Although the attorney-client privilege, in particular, and attorney-client confidentiality, in general, are important concerns due genuine deference, courts have never treated them as inviolable. When a defendant has challenged his conviction by asserting an issue that makes privileged communications relevant, he waives the privilege in respect to those communications. *See, e.g., Smith v. Estelle,* 527 F.2d 430, 434 n. 9 (5th Cir.1976) (whether defendant would have testified but for admission of constitutionally invalid confession).[6]

We must recall that these challenges are presented to us by persons already convicted of a crime. Those convictions are presumptively valid. *See Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983); *cf. United States v. Bulman,* 667 F.2d 1374, 1380 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). The courts remain open to such persons, but it is right that the challengers bear the burden of establishing that their convictions were inconsistent with the requirements of the Constitution.

Many of the brief recesses during a trial day are not critical stages of the criminal proceeding. If the category of sixth amendment cases in which prejudice will be presumed is to be extended to instances of interference with defense counsel during a brief, routine recess, the nation's highest court should take that step first. Per se reversal rules are not favored. *See Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Nor should they be. To the extent that *United States v. Con-*

*way,* 632 F.2d 641 (5th Cir.1980), and Judge Hatchett's opinion mandate per se reversals in this circuit, they are, in my opinion, mistaken. The social costs of crime are too great to allow the proliferation of per se reversal rules.

---

**6.** For other examples of waiver, see *United States v. Miller,* 600 F.2d 498, 501–02 (5th Cir.) (criminal law securities case, issue of good faith reliance on attorney's advice), *cert. denied,* 444 U.S. 955, 100 S.Ct. 434, 62 L.Ed.2d 327 (1979); *Johnson v. United States,* 542 F.2d 941 (5th Cir. 1976) (validity of guilty plea based on attorney's advice); *Bennett v. Mississippi,* 523 F.2d 802, 804 (5th Cir.1975) (waiver of right to appeal); *Armstrong v. United States,* 440 F.2d 658 (5th Cir. 1971) (validity of guilty plea based on counsel's advice); *United States v. Woodall,* 438 F.2d

1317, 1324–26 (5th Cir.1970) (en banc) (guilty plea based on counsel's advice), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971). *See also Matter of Continental Illinois Securities Litigation,* 732 F.2d 1302, 1315 n. 20 (7th Cir. 1984) (securities case); *Tasby v. United States,* 504 F.2d 332 (8th Cir.1974) (defendant claiming attorney coerced him into testifying), *cert. denied,* 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975). *See generally* Thornburg, *Attorney-Client Privilege: Issue-Related Waivers,* 50 S. Air L. & Com. 1039 (1985).