STATE OF CONNECTICUT *v.* JAMES R. MEBANE
(13037)

HEALEY, SHEA, CALLAHAN, F. HENNESSY and SPADA, JS.

Argued April 9—decision released August 4, 1987

*William R. Schipul,* assistant public defender, for the appellant (defendant).

*C. Robert Satti, Jr.,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. After a trial to the jury, the defendant, James Mebane, was found guilty of the crime of the sale of heroin in violation of General Statutes § 19-480 (a).[1] The defendant then appealed his conviction to the Appellate Court. The Appellate Court affirmed the judgment of conviction. *State* v. *Mebane,*

---

[1] General Statutes (Rev. to 1981) § 19-480 (a) (now General Statutes § 21a-277) provides: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance, other than marihuana, or a narcotic substance except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than three thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than five thousand dollars, or be both fined and imprisoned."

8 Conn. App. 63, 511 A.2d 359 (1986). Thereafter, this court granted the defendant's petition for certification.

The question presented in the defendant's petition is as follows: "Did the Appellate Court err in failing to find reversible error in the trial court's granting of [the] state's motion to sequester the defendant from his attorney . . . ." The defendant claims that the Appellate Court erred in two respects: (1) failing to find that the trial court's order mandated a per se reversal; and (2) holding that the state sustained its burden of showing that the trial court's error was harmless beyond a reasonable doubt.[2] We reverse the Appellate Court and remand to that court with direction.

The following background circumstances are not in dispute. After the state had rested its case-in-chief on September 5, 1984, the defendant took the stand to testify. On the first day of his testimony, during cross-examination by the state, the trial court stated that it was going to take a recess. At that time, the state asked the court for a sequestration order as to the defendant.[3]

---

[2] The defendant also claims that the Appellate Court erred in holding that the sequestration order applied only to a single twenty-one minute recess. The defendant argues that because the trial court did not place a time limit on the order, its effect was to prevent the defendant from consulting with his attorney about any aspect of the trial or defense strategy overnight. Because we hold that under the United States constitution it was error for the trial court to sequester the defendant from his attorney for even the twenty-one minute recess, we need not resolve this issue.

[3] At that time, the following took place:

"The Court: Exception. We'll take a short recess.

"Mr. Satti: Your Honor, prior to going out, can I get a sequestration order, which I had not asked for prior to this witness. I'd like to ask for a sequestration order.

"The Court: If there are any witnesses going to testify for the defense, then that order is effective immediately. The request is granted.

"Mr. Satti: Can I request he not talk to his counsel since I'm in the middle of cross-examination?

"The Court: You want to sequester this witness?

"Mr. Schipul: Your Honor, I would strongly object to that request inasmuch as Mr. Satti has always had the opportunity to talk to his witness at any time.

The state requested that the defendant "not talk to his counsel since [the state was] in the middle of cross-examination." Although defense counsel "strongly" objected, the court granted the state's request. Defense counsel took an exception to the ruling.

After a recess of approximately twenty-one minutes, the court reconvened and the state resumed its cross-examination of the defendant. After the defendant had been questioned, without any further recess, on redirect, recross, additional redirect and recross, the court adjourned for the day. The next morning, the defendant was recalled and testified on additional redirect, recross and then additional redirect and recross.[4]

The defendant argues that the trial court's sequestration order violated his rights under the United States constitution and the Connecticut constitution which guarantee him a fair trial, due process and the effective assistance of counsel. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8; *State* v. *Mebane,* supra, 65.[5] The defendant maintains that a sequestration order such as that given in this case, no matter for how short a time, mandates reversal per se. He argues that the harmless error rule is not applicable in this context because the United States Supreme Court has recognized that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," citing *Chapman* v. *California,* 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied,

---

"The Court: The issue was never raised by you, Mr. Schipul. It's been raised by Mr. Satti.

"I'll grant that request, and the witness is to be sequestered.

"Mr. Schipul: I'll take an exception.

"The Court: Exception. The Court is in recess.

(Whereupon Court recessed at 3:22 p.m. and reconvened at 3:43 p.m.)"

[4] The transcript indicates that the defendant's examination on September 6, 1984, began at 10 a.m. and finished at 11:24 a.m.

[5] Because of our holding today, we need not address the claims made by the defendant under article first, § 8, of the Connecticut constitution.

386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967). Alternatively, he attacks the Appellate Court's application of the harmless error doctrine. The defendant argues that if the harmless error doctrine is applicable, the Appellate Court erred in concluding that the state had sustained its burden of proving that the trial court's error was harmless beyond a reasonable doubt.

The state, on the other hand, argues that the Appellate Court did not err in rejecting a rule of per se reversal. It asserts that the right to effective assistance of counsel is not one of the constitutional protections the denial of which requires automatic reversal. Even conceding that the trial court's ruling was error, as the state did before both this court and the Appellate Court, it nevertheless maintains that the Appellate Court correctly applied harmless error analysis in concluding that the state had proven the error harmless beyond a reasonable doubt. *State* v. *Mebane,* supra, 65, 70. We disagree and reverse the judgment of the Appellate Court.

"The Sixth Amendment provides that an accused shall enjoy the right 'to have the Assistance of Counsel for his defense.' This right, *fundamental* to our system of justice,[6] is meant to assure fairness in the adversary criminal process. *Gideon* v. *Wainwright,* 372 U.S. 335, 344 [88 S. Ct. 792, 9 L. Ed. 2d 799] (1963); *Glasser* v. *United States,* 315 U.S. 60, 69–70, 75–76 [62 S. Ct. 454, 86 L. Ed. 680] (1942); *Johnson* v. *Zerbst,* 304 U.S. 458, 462–63 [58 S. Ct. 1019, 82 L. Ed. 1461] (1938)." (Emphasis added.) *United States* v. *Morrison,* 449 U.S. 361, 364, 101 S. Ct. 665, 66 L. Ed. 2d 564, reh. denied, 450 U.S. 960, 101 S. Ct. 1420, 67 L. Ed. 2d 385 (1981). The United States Supreme Court "[has]

[6] We have said that "whether a claimed right is 'fundamental' lies in assessing whether that 'right' is explicitly or implicitly guaranteed by the constitution. [*San Antonio School District* v. *Rodriguez,* 411 U.S. 1, 34, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973)]." *Frazier* v. *Manson,* 176 Conn. 638, 646, 410 A.2d 475 (1979).

. . . been responsive to proved claims that governmental conduct has rendered counsel's assistance to the defendant ineffective. *Moore* v. *Illinois*, 434 U.S. 220 [98 S. Ct. 458, 54 L. Ed. 2d 424] (1977); *Geders* v. *United States*, 425 U.S. 80 [96 S. Ct. 1330, 47 L. Ed. 2d 592] (1976); *Herring* v. *New York*, 422 U.S. 853 [95 S. Ct. 2550, 45 L. Ed. 2d 593] (1975); *Gilbert* v. *California*, 388 U.S. 263 [87 S. Ct. 1951, 18 L. Ed. 2d 1178] (1967); *United States* v. *Wade*, 388 U.S. 218 [87 S. Ct. 1926, 18 L. Ed. 2d 1149] (1967); *Massiah* v. *United States*, 377 U.S. 201 [84 S. Ct. 1199, 12 L. Ed. 2d 246] (1964)." *United States* v. *Morrison*, supra; see *Strickland* v. *Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984).

There is no question that the trial court's order entered on the state's motion was erroneous and that this error was of constitutional magnitude. The issue, therefore, is whether a per se reversal of the defendant's conviction is required or whether the harmless error analysis is to be applied.

In pressing their claims, both parties, as did the Appellate Court, place great emphasis on *Geders* v. *United States*, supra. In *Geders*, the United States Supreme Court held that a trial court order preventing Geders, a defendant in a federal prosecution, from consulting with his counsel " 'about anything' " during a seventeen hour overnight recess between his direct and cross-examination "impinged" upon his right to the assistance of counsel guaranteed by the sixth amendment. Id., 91. While acknowledging the broad powers of a trial judge over the control and shaping of the trial, *Geders* held that that power did not include the authority to prohibit consultation between a criminal defendant and his attorney for so long a period of time. The per se holding in *Geders* was reached without requiring the defendant to make any preliminary

showing of prejudice. The *Geders* court, however, expressly limited its holding, stating: *"United States* v. *Leighton,* 386 F.2d 822 ([2d Cir.] 1967), on which the Court of Appeals relied, involved an embargo order preventing a defendant from consulting his attorney during a brief routine recess during the trial day, a matter we emphasize is not before us in this case." Id., 89 n.2. Accordingly, the United States Supreme Court did not decide the question of whether a court order denying the right of consultation between a criminal defendant and his attorney "during a brief routine recess" constitutes a violation of the defendant's sixth amendment rights.[7]

Although, as the court suggested in *Geders,* some courts had already spoken to the question the *Geders* court left open; see, e.g., *United States* v. *Leighton,* supra; it was not long after the *Geders* decision that courts were then called upon to decide that open question. The federal circuit courts that have addressed the issue have reached differing results. In *Crutchfield* v. *Wainwright,* 803 F.2d 1103, 1109 (11th Cir. 1986) (*Crutchfield II*), reh. denied, 810 F.2d 208 (1987), the court summarized the different holdings stating: "The majority of the circuits that have announced rules for reviewing denial of assistance of counsel claims favor

---

[7] In *Geders* v. *United States,* 425 U.S. 80, 92, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976), Justice Marshall wrote a separate concurring opinion in which Justice Brennan joined. In that opinion, Justice Marshall stated: "The Court notes that this case does not involve an order barring communication between defendant and counsel during a 'brief routine recess during the trial day.' *Ante,* at 89 n.2. That is, of course, true. I would add, however, that I do not understand the Court's observation as suggesting that as a general rule no constitutional infirmity would inhere in an order barring communication between a defendant and his attorney during a 'brief routine recess.' In my view, the general principles adopted by the Court today are fully applicable to the analysis of *any* order barring communication between a defendant and his attorney, at least where that communication would not interfere with the orderly and expeditious progress of the trial." (Emphasis in original.)

the per se rule. *United States* v. *Allen,* 542 F.2d 630 (4th Cir. 1976), cert. denied, 430 U.S. 908, 97 S. Ct. 1179, 51 L. Ed. 2d 584 (1977) (per se rule applied prospectively); *United States* v. *Bryant,* 545 F.2d 1035 (6th Cir. 1976) (in absence of extraordinary circumstances, it is abuse of discretion and violation of right of defendant to assistance of counsel for a trial court to direct that defendant have no communication with his counsel during criminal trial over a noon recess). Only one circuit applies a harmless error analysis to a prohibition of consultation during trial between a criminal defendant and his counsel. *United States* v. *DiLapi,* 651 F.2d 140 (2d Cir. 1981), cert. denied, 455 U.S. 938, 102 S. Ct. 1427, 71 L. Ed. 2d 648 (1982). The Third and Fourth Circuits hold that no deprivation occurs in the absence of an objection. See *Bailey* v. *Redman,* 657 F.2d 21 (3d Cir. 1981), [cert. denied, 454 U.S. 1153, 102 S. Ct. 1024, 71 L. Ed. 2d 310, reh. denied, 455 U.S. 995, 102 S. Ct. 1624, 71 L. Ed. 2d 857 (1982),] and *Stubbs* v. *Bordenkircher,* 689 F.2d 1205 (4th Cir. 1982), cert. denied, 461 U.S. 907, 103 S. Ct. 1879, 76 L. Ed. 2d 810 (1983)." *Allen* involved a routine recess. *Bryant* concerned a blanket restriction during the luncheon recess. *DiLapi* was a five minute recess and said that a showing of specific prejudice was necessary. In *Bailey,* the Third Circuit determined that the deprivation of assistance of counsel did not take place because the defendant did not object to the restriction on communication imposed by the trial court's order, but if the defendant had objected, prejudice need not be established. In *Stubbs,* a luncheon recess case, specific prejudice was required to be shown. The Fifth Circuit has also addressed this issue holding that even a brief restriction on a criminal defendant's right to confer with counsel constitutes a violation of the sixth amendment and that if such a restriction occurs, reversal is required per se. *United States* v. *Conway,* 632 F.2d

641 (5th Cir. 1980); see also *United States* v. *Vesaas,* 586 F.2d 101, 102 n.2 (8th Cir. 1978) ("we have grave doubts that even a brief restriction on a criminal defendant's right to confer with counsel can be squared with the Sixth Amendment").

Some state courts have formulated per se reversal rules since *Geders.* See, e.g., *Jackson* v. *United States,* 420 A.2d 1202 (D.C. 1979) (ban on consultation about testimony during luncheon recess); *Stripling* v. *State,* 349 So. 2d 187 (Fla. App. 1977) (blanket restriction imposed during luncheon recess); *People* v. *Hagen,* 86 App. Div. 2d 617, 446 N.Y.S.2d 91 (1982); *Commonwealth* v. *Barber,* 250 Pa. Super. 427, 429, 378 A.2d 1011 (1977), citing *Commonwealth* v. *Logan,* 456 Pa. 508, 325 A.2d 313 (1974); *Mastracchio* v. *Houle,* 416 A.2d 116 (R.I. 1980). Other state courts, however, in addressing recesses shorter than *Geders* have required a showing of specific prejudice. See, e.g., *Bova* v. *State,* 410 So. 2d 1343 (Fla. 1982) (ten minute recess); *People* v. *Seider,* 98 Ill. App. 3d 175, 423 N.E.2d 1217 (1981) (short recess to which defendant did not object); *State* v. *Perry,* 278 S.C. 490, 299 S.E.2d 324, cert. denied, 461 U.S. 908, 103 S. Ct. 1881, 76 L. Ed. 2d 811 (1983) (fifteen minute recess).

The Appellate Court rejected a rule of per se reversal, stating instead that it would employ a harmless error analysis. In doing so, it stated that "[w]e hold that the test set forth in *Crutchfield* v. *Wainwright,* [772 F.2d 839, 843, vacated, 779 F.2d 1466 (11th Cir. 1985) (*Crutchfield I*)],[8] and *Chapman* v. *California,*

---

[8] The judgment of the Appellate Court in *State* v. *Mebane,* 8 Conn. App. 63, 511 A.2d 359 (1986), was announced on July 1, 1986. *Crutchfield* v. *Wainwright* was originally decided by the Eleventh Circuit Court of Appeals on October 3, 1985, and is reported in 772 F.2d 839. At that time, the case was remanded to the District Court for the purpose of determining whether the denial of access by the defendant to his attorney resulted in prejudice. On December 19, 1985, the Eleventh Circuit Court of Appeals vacated its

supra, is the appropriate one and that the burden [of demonstrating harmless error beyond a reasonable doubt] should rest on the state." *State* v. *Mebane*, supra, 69. Drawing on *Chapman* and *Crutchfield I*, the Appellate Court said that "[t]he rule of per se reversal is viable 'only if the likelihood of prejudice is so great that a case-by-case inquiry would not be worth its cost. We simply do not believe that this is so in the case of routine recesses during the course of a day at trial. If the recess were very brief, for example, a matter of minutes, then prejudice to the defendant would seem highly unlikely. As the length of the recess increases, of course, so does the probability of prejudice. Nonetheless, denial of access during any recess of the type likely to arise in the course of a day at trial does not seem sufficiently likely to justify a rule of per se reversal.' [*Crutchfield I*, supra]." *State* v. *Mebane*, supra, 67. Having determined to follow *Crutchfield I*, supra, which adopted the *Chapman* harmless error analysis, the

opinion in 772 F.2d 839, and ordered that the case be reheard by it en banc. *Crutchfield* v. *Wainwright*, 779 F.2d 1466 (11th Cir. 1985). Thereafter, on November 10, 1986, the Eleventh Circuit Court of Appeals handed down its decision en banc which is reported in 803 F.2d 1103.

The en banc court of twelve was divided. One judge, writing the plurality opinion for himself and five others, said that any deprivation of assistance of counsel constituted reversible error and a new trial was required per se. Nevertheless, these six judges found no deprivation of the defendant's right because the record did not show any objection to the court's order or reflect a desire on behalf of the defendant to consult with his attorney. Id., 1109. Another judge, writing for himself and four other judges, eschewed orders denying access to counsel but felt that the analysis, unlike that of the plurality, should consider four relevant factors. These are: (1) the length of the recess; (2) the degree of restriction placed on the attorney-client communication; (3) the point in the proceedings at which the recess involved is taken; and (4) whether the defendant or his counsel objected and, if so, what was said. Id., 1115. These judges found no deprivation of the defendant's right. Another judge also concurred and filed a separate opinion. Id., 1118.

In this appeal, both counsel were familiar with the en banc opinion in *Crutchfield* and argued it before us, both parties contending for differing interpretations of that opinion.

Appellate Court found that the state had sustained its burden of proving harmless error beyond a reasonable doubt. *State* v. *Mebane,* supra, 69–70.[9] We do not agree with the Appellate Court. We believe that a per se rule of automatic reversal more properly vindicates the denial of the defendant's fundamental constitutional right to assistance of counsel guaranteed by the sixth amendment.

In *Chapman* v. *California,* supra, 23, the United States Supreme Court acknowledged that a federal harmless error rule should apply to some errors of constitutional magnitude while others can never be treated as harmless error. One such "substantial" right referred to in *Chapman* was the right to counsel. Id., 23 n.8, citing *Gideon* v. *Wainwright,* supra; see generally note, "Harmless Constitutional Error," 83 Harv. L. Rev. 814 (1970); note, "Harmless Constitutional Error," 30 U. Pitt. L. Rev. 553 (1968–69). Only last year, the United States Supreme Court, in the *Chapman* context, after noting that it "[had] stressed on more than one occasion, [that]

---

[9] In deciding to follow the approach in *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), and *Crutchfield* v. *Wainwright,* 772 F.2d 839, vacated, 779 F.2d 1466 (11th Cir. 1985), and imposing the burden upon the state, the Appellate Court stated: "This is consistent with the weight of authority which has placed upon the prosecution the burden of proving harmless error in cases where the error is of constitutional dimension. 'The United States Supreme Court has recognized that certain constitutional protections are so central to the requirement of a fair trial that their violation absolutely requires that the conviction from which they arose be set aside. *Chapman* v. *California,* [supra, 23]. In some circumstances, however, violations of other, less basic constitutional rights may be considered harmless and therefore do not compel reversal. Id., 23–24. "If error touches a less basic constitutional right, we sometimes apply the 'harmless error' exception, but only sparingly, in a few, discrete circumstances. *State* v. *Zeko,* 177 Conn. 545, 558, 418 A.2d 917 (1979). In such circumstances we require the state to prove the error harmless beyond a reasonable doubt." ' *State* v. *Cohane,* 193 Conn. 474, 484–85, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); see *State* v. *Burrows,* 5 Conn. App. 556, 560, 500 A.2d 970 (1985)." *State* v. *Mebane,* 8 Conn. App. 63, 69–70, 511 A.2d 359 (1986).

the Constitution entitles a criminal defendant to a fair trial, not a perfect one," stated: "At the same time, we have observed that some constitutional errors—such as denying a defendant the assistance of counsel at trial . . . are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case. *Chapman* [v. *California,* supra,] (citing *Gideon* v. *Wainwright,* [supra] . . .)." *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 681–82, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); see *Mudd* v. *United States,* 798 F.2d 1509, 1513–14 (D.C. Cir. 1986).

The *Chapman* harmless error analysis, we submit, is not workable in cases of the complete denial of the assistance of counsel. First, to require a showing of prejudice "burdens" one of the most fundamental rights of a criminal accused, that is, the defendant's right to have "the guiding hand of counsel at every step in the proceedings against him." *Powell* v. *Alabama,* 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 2d 158 (1932). While *Powell* was decided over fifty years ago, its vigor persists, particularly when the right to assistance of counsel is denied "at a critical stage of the proceedings," as in this case. To require the defendant to show prejudice would, of course, implicate and most likely intrude into the attorney-client relationship—a consequence hardly commendable. See *Bailey* v. *Redman,* supra, 24. Moreover, the state has the burden of proving harmless error and yet the defendant and his attorney are the only ones realistically in possession of the relevant circumstances, i.e., what they would have discussed had they not been ordered otherwise. See *Crutchfield II,* 1114–15 n.12 (Tjoflat, J., concurring). In any event, short of the real danger of trenching upon the attorney-client privilege, another reason for rejecting a rule that the defendant must show prejudice is that the impact of prejudice from being deprived of the assistance of

counsel cannot be adequately assessed from the bare record itself in contrast to "the normal case where a harmless-error rule is applied, the error occurs at trial and its scope is [more] readily identifiable." *Holloway* v. *Arkansas,* 435 U.S. 475, 490, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).

It is apparent that the only way a defendant could show prejudice would be to disclose by evidence what he and his counsel would have discussed, what they were prevented from discussing and how the improper court order allegedly interfered with his defense. It is no answer, as the state argues, that all the defendant or his counsel has to do when the trial court enters such an order is to state that they want to consult with each other and, therefore, the potential intrusion of the attorney-client privilege never emerges. This hardly seems a viable solution where the state, as here, affirmatively seeks the order proscribing this fundamental right. In this case, defense counsel "strongly object[ed]" to the order. Given the defendant's right to communicate with counsel, counsel's objection and exception, fairly viewed, must only mean that the defendant and counsel desired to communicate. This objection and exception alerted the court and the state in that regard. Significantly, the state raised no claims of concern over "coaching" the defendant or other potential impropriety involving counsel at any time. Even if it had, *Geders* properly describes methods of meeting such problems without ordering an absolute denial of communication. See *Geders* v. *United States,* supra, 89–91; see also *Crutchfield II,* supra, 1114–15 (Tjoflat, J., concurring). Moreover, no citation is needed to demonstrate that recesses, long or short, offer the opportunity for a defendant and his counsel to discuss many things including "advice on demeanor or speaking style." *Mudd* v. *United States,* supra, 1512.[10]

---

[10] We note that courts, interpreting *Geders* v. *United States,* 425 U.S. 80, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976), have expressly recognized the

It is evident that a per se rule not only better serves justice but that it is also more consistent with *Geders* than harmless error analysis. While the *Geders* majority did not specifically address the issue of whether *Geders* had been prejudiced by the trial court's nonconsultation order, it must have necessarily rejected the holding of the Fifth Circuit Court of Appeals in *United States* v. *Fink,* 502 F.2d 1 (5th Cir. 1974). In *Fink* from

---

necessity of making a timely objection to an order denying consultation between a defendant and his counsel. See, e.g., *Crutchfield* v. *Wainwright,* 803 F.2d 1103, 1109–10 (11th Cir. 1986); *Bailey* v. *State,* 422 A.2d 956 (Del. 1980) (showing of prejudice required because defendant had not timely objected to restriction on communication during overnight recess); *People* v. *Narayan,* 54 N.Y.2d 106, 429 N.E.2d 123, 444 N.Y.S.2d 604 (1981) (defendant did not object to proscription on communication until morning after the order whereupon the trial court sua sponte reversed itself; thus, "any alleged interference with [the] right to consult was minimal"). Some of these courts treat the failure to object timely as a waiver by the defendant. See, e.g., *Stubbs* v. *Bordenkircher,* 689 F.2d 1205, 1207 (4th Cir. 1982), cert. denied, 461 U.S. 907, 103 S. Ct. 1879, 76 L. Ed. 2d 810 (1983); *Bailey* v. *Redman,* 657 F.2d 21, 24 (3d Cir. 1981), cert. denied, 454 U.S. 1153, 102 S. Ct. 1024, 71 L. Ed. 2d 310, reh. denied, 455 U.S. 995, 102 S. Ct. 1624, 71 L. Ed. 2d 857 (1982); *United States* v. *Allen,* 542 F.2d 630, 634 (4th Cir. 1976), cert. denied, 430 U.S. 908, 97 S. Ct. 1179, 51 L. Ed. 2d 584 (1977). In *Bailey,* the defense did not object or question the trial court's instruction that the defendant not discuss his testimony with anyone before trial resumed on the following day. In that case, the Third Circuit Court of Appeals, in affirming the defendant's conviction, found that he had not been "deprived" of his right to counsel which was a predicate to relief. Explicating that "a defendant need not disclose confidential information in order to prove that he [had] been 'deprived' of an opportunity to meet with counsel" but "[t]o show a 'deprivation' of his sixth amendment rights, a defendant must merely demonstrate that he wanted to meet with counsel, but was prevented from doing so by the court's instruction." *Bailey* v. *Redman,* supra, 24. Drawing on *Cuyler* v. *Sullivan,* 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), *Bailey* pointed out that the "distinction between the 'deprivation' of a right and the 'prejudice' that may result therefrom is not a new one. . . . A showing that [a person] has been 'deprived' of his right to effective counsel is a predicate to relief; a showing of 'prejudice' is not." *Bailey* v. *Redman,* supra. In this case, the defendant timely objected and excepted to the trial court's order. We, therefore, need not decide whether the failure to object would require a different result.

which Geders had appealed, the Fifth Circuit held that the reversal of Geders' conviction was not proper unless there was a showing of "actual harm." Id., 9. We agree with the *Mudd* court in that regard when it says of *Geders:* "Given that the question was squarely presented, it is unreasonable to assume that the [United States] Supreme Court *sub silentio* subjected the violation [of the right to counsel] to a harmless error test. See *Geders* [v. *United States,* supra, 92] . . . ." *Mudd* v. *United States,* supra, 1513; see also *Jackson* v. *United States,* supra, 1204. In 1984, the court in *United States* v. *Cronic,* 466 U.S. 648, 659 n.25, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), cited *Geders,* inter alia, for the statement that it had "uniformly found constitutional error *without* any showing of prejudice when counsel was either totally absent, *or prevented from assisting the accused during a critical stage of the proceeding.* " (Emphasis added.) Additional support for this is found in Justice Marshall's concurring opinion in *Geders,* joined by Justice Brennan, where he states: "[A] defendant who claims that an order prohibiting communication with his lawyer impinges upon his Sixth Amendment right to counsel need not make a preliminary showing of prejudice. Such an order is inherently suspect, and requires initial justification by the government." *Geders* v. *United States,* supra, 92–93 (Marshall, J., concurring).

Our reading of the cases urged upon us by the state do not require a different legal result. The state refers to *Morris* v. *Slappy,* 461 U.S. 1, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983), stating in its brief that "the right to effective assistance of counsel is not one of the constitutional protections that requires automatic reversal" and quotes a sentence from that decision which states: "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's

Sixth Amendment right to counsel." Id., 11. *Slappy* is inapposite here for several reasons. In *Slappy,* the issue was whether the defendant's sixth amendment right to counsel was violated by the state trial court "by denying [Morris'] motion for a continuance until the Deputy Public Defender initially assigned to defend him was available [after hospitalization for surgery]." Id., 4. That issue is certainly not the issue here. In *Slappy,* the Chief Justice in writing for five members of that court did not refer to *Powell, Geders* or *Chapman* apparently because that case simply did not involve, even arguably, the issue before us. Moreover, as we have already noted, the strong objection and exception to the trial court's order in this case was adequate to indicate that counsel and this defendant wanted to communicate during the recess as is normally done. Our disposition does not require a showing of prejudice where such a blanket order is made and objected and excepted to. It is interesting to point out that *Slappy* also states: "Of course, inconvenience and embarassment to witnesses cannot justify failing to enforce constitutional rights of an accused; when a prejudicial error is made that clearly impairs a defendant's constitutional rights, the burden of a new trial must be borne by the prosecution, the courts, and the witnesses; the Constitution permits nothing less." Id., 14.[11]

The state, in oral argument, also referred to *Delaware* v. *Van Arsdall,* supra, and *United States* v. *Hasting,*

[11] The state argues that *State* v. *Truppi,* 182 Conn. 449, 438 A.2d 712, cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981), in which we refused to apply harmless error analysis to a burden shifting *Sandstrom*-type charge is distinguishable from this case. *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2540, 61 L. Ed. 2d 39 (1979). The state argues that that is so because "the effective assistance of counsel is not one of the constitutional rights whose denial will require per se reversal," citing *Morris* v. *Slappy,* 461 U.S. 1, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983), for that statement. As we have already discussed, *Slappy* is inapposite to the sixth amendment claim involved in this case.

461 U.S. 499, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983), as indicating that "most [but not all] constitutional violations are amenable to harmless error" analysis. It is true that in *Delaware* v. *Van Arsdall,* supra, 681, the United States Supreme Court stated that "[t]he harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . ." *Van Arsdall,* however, in the next sentence points out that "[a]t the same time, we have observed that some constitutional errors—such as denying a defendant the assistance of counsel at trial . . . are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case." Id., 681, citing *Chapman* v. *California,* supra, 23 n.8;[12] see *Mudd* v. *United States,* supra, 1513–14. To any argument that *Van Arsdall* stands for the proposition that a harmless error test is required before reversing a conviction for a sixth amendment violation, it suffices to say that not only did *Van Arsdall* involve a violation of the confrontation clause and not the right to counsel clause of the sixth amendment, but also that nothing in that case suggests that a sixth amendment infringement shall be subject to a similar inquiry.

In addition, neither *Leighton* nor *DiLapi,* both decided by the Second Circuit Court of Appeals, requires a contrary result. First, the Second Circuit's view is the minority view. *Crutchfield II,* supra, 1109. *Leighton,* which was decided pre-*Geders,* involved an absolute prohibition of consultation during a luncheon recess. The *Leighton* court disapproved that prohibition, not only calling it "plainly uncalled for" but also stating that

---

[12] Later in the 1986 term, the United States Supreme Court reiterated the same purpose of the harmless error doctrine as well as its inapplicability to "some constitutional errors." *Rose* v. *Clark,* 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986).

"we are unable to understand why it was sought or made . . . ." *United States* v. *Leighton,* supra, 823. The court in *Leighton* declined to order a new trial in the absence of any "actual harm to the right to effective assistance of counsel." Id. In *United States* v. *DiLapi,* supra, 148, which involved a five minute recess, the court, acknowledging that other circuits had "applied *Geders* to reverse convictions, without inquiring as to actual harm, when communication between defendant and counsel was barred during brief recesses in the middle of the trial day," nevertheless declined to do likewise. While recognizing that there is "some force to the contention that reversal should always occur because attempts to demonstrate how helpful a consultation would have been may themselves risk some impairment of the right to effective assistance of counsel by intruding upon protected confidences," the *DiLapi* court, citing the *Geders* limitation to an overnight recess and its earlier disapproval in *Leighton,* stated that it was "reluctant . . . in the present state of the law [to say] that the erroneous instruction requires an automatic reversal in this case." Id. *DiLapi,* however, opined that it "need not determine whether a similar instruction would require reversal in cases arising hereafter without regard to actual prejudice." Id., 149. Significantly, the court closed its discussion of this issue by stating: "It is sufficient to state that the instruction should not be given again." Id. Whether this admonition foreshadows a potentially different view by the Second Circuit Court of Appeals is, of course, speculative. In any event, we believe that the approach that we adopt today represents the better view.

Finally, we are aware that frequently all of the witnesses, both for the state and defense, are the subject of a sequestration order. A criminally accused, however, is not simply a witness but also the defendant. Obviously, a sequestration order affects a defendant

in a completely different way than it does a nonparty witness who presumably has no stake in the outcome of the trial. *Geders* v. *United States,* supra, 88. The sixth amendment right to counsel is "obviously in effect [during a recess], and [the defendant] may consult with his counsel during any recess so long as the orderly conduct of the trial is not impaired." *United States* v. *DiLapi,* supra, 148; see *Jackson* v. *United States,* supra, 1205. "Lawyers in criminal cases 'are necessities, not luxuries' "; *United States* v. *Cronic,* supra, 653, quoting *Gideon* v. *Wainwright,* supra, 344; and the circumstance in this case that the deprivation of the defendant's right to counsel was briefer than in *Geders* does not attenuate the constitutional significance of that right.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to set aside the judgment and to order a new trial.

In this opinion F. HENNESSY and SPADA, Js., concurred.

SHEA, J., concurring. I agree with the rescript reversing the judgment of the Appellate Court and ordering a new trial, but I disagree with the view of the majority that "a per se rule of automatic reversal more properly vindicates the denial of the defendant's fundamental constitutional right to assistance of counsel guaranteed by the sixth amendment." Because the decision of the United States Supreme Court in *Geders* v. *United States,* 425 U.S. 80, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976), leaves unresolved the issue of whether automatic reversal is required where a court prohibits communication between attorney and client during a trial recess of brief duration, I would follow the opinion of the United States Court of Appeals for the Second Circuit in *United States* v. *DiLapi,* 651 F.2d 140 (2d Cir. 1981), cert. denied, 455 U.S. 938, 102 S. Ct. 1427, 71

L. Ed. 2d 648 (1982), which rejected the per se reversal rule and applied a harmless error analysis where the communication ban was in effect only for a recess of five minutes. Such an analysis requires, however, that the state demonstrate that the error in barring attorney-client communication was harmless beyond a reasonable doubt. I disagree with the conclusion of the Appellate Court in applying such an analysis that the state has sustained its burden under this standard, which is applicable to errors of constitutional dimension.

It is a difficult proposition to maintain that a criminal conviction must be reversed because of a trial court error that, beyond a reasonable doubt, has resulted in no prejudice to a defendant and thus is harmless. One possible purpose of such an automatic reversal rule, however, may be to advance values beyond those involved in the case under consideration in a manner not adequately accomplished by mere appellate recognition of an error. See *Vasquez* v. *Hillery,* 474 U.S. 254, 262, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); *Rose* v. *Mitchell,* 443 U.S. 545, 578, 99 S. Ct. 2993, 61 L. Ed. 2d 739 (1979) (Stewart, J., concurring). The United States Supreme Court, however, has never articulated such a basis for its declaration that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . . ." *Chapman* v. *California,* 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967). Presumably, therefore, those infringements of a defendant's constitutional rights in a criminal case where harmless error analysis is deemed inappropriate involve situations where the constitutional violation must be deemed harmful under all circumstances or where it is of such a nature that ascertainment of its harmfulness is impossible or so difficult as not to warrant the

endeavor. Such cases are rare exceptions to "the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

Although the denial of the assistance of counsel at a trial has been placed within the narrow category of constitutional violations requiring automatic reversal, it does not necessarily follow that every erroneous interference with attorney-client communication, however brief or inconsequential, is inevitably harmful. The unexpressed concern of courts that have indulged this nonsequitur rather than engage in a harmfulness evaluation is that there often is nothing in the record from which a reviewing court can determine the effect of an erroneous ban on communication. Consequently, it is assumed that resort to speculation in such cases is likely in estimating the prejudicial impact of the error. The requirement under harmless error analysis that the state demonstrate harmlessness beyond a reasonable doubt, however, should dispel such a fear. Where the appellate record contains nothing to support a conclusion that the communication ban is harmless beyond a reasonable doubt, under that doctrine a reversal is required.

For a similar reason the concern expressed in the majority opinion that a harmless error analysis may somehow trespass upon the attorney-client privilege is unwarranted. The state has the burden of providing a record from which harmlessness can be found, while the defendant and his counsel may remain silent, except for making a bare objection, which the majority opinion incongruously requires to preserve this constitutional error claim. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Even if something more were

required to protest a communication embargo, it would not be necessary for defense counsel to reveal his purpose in wishing to confer with his client. Furthermore, the attorney-client privilege protects communications that have taken place and is not at all applicable to those that have not occurred because they were forbidden.

It is not difficult to envision situations in which the record may demonstrate harmlessness in accordance with the constitutional standard. For example, if the prohibition against communication with a defendant has been limited to a brief recess occurring during cross-examination and the additional cross-examination following the recess has been clearly insignificant, there would ordinarily be a sufficient basis to find the standard to have been satisfied. Indeed, those courts that restrict automatic reversal to cases in which defense counsel have raised objection to a communication ban, as does the majority opinion, appear to engage in a limited harmless error analysis, reasoning that the absence of an objection indicates that counsel had no desire to discuss anything with his client. *Stubbs* v. *Bordenkircher,* 689 F.2d 1205, 1207 (4th Cir. 1982), cert. denied, 461 U.S. 907, 103 S. Ct. 1879, 76 L. Ed. 2d 810 (1983); *Bailey* v. *Redman,* 657 F.2d 21, 24 (3d Cir. 1981), cert. denied, 454 U.S. 1153, 102 S. Ct. 1024, 71 L. Ed. 2d 310, reh. denied, 455 U.S. 995, 102 S. Ct. 1624, 71 L. Ed. 2d 857 (1982). The emphasis placed by the court's opinion in *Geders* itself upon the fact that the communications ban had continued for a period of seventeen hours, including an overnight recess, and must, therefore, have interfered with the normal discussion between attorney and client of the progress of the case also indicates that harmfulness was a factor in determining whether a deprivation of the right to counsel had occurred. Because I am reluctant to expand the category of constitutional errors for which automatic reversal is mandated, and authoritative prece-

dent remains indecisive upon the subject, I choose not to join in the majority opinion.

I agree with the result, nevertheless, because the state has not proved that the "sequestration" order of the trial court was harmless beyond a reasonable doubt. In my judgment, the Appellate Court erred in its application of that standard to the circumstances of this case. Although the Appellate Court construed the trial court's order as effective during only the twenty-one minute recess following its issuance, the order may well have been viewed by the defendant or his counsel as precluding all discussion between them until completion of his testimony. No limitation was placed on the duration of the order and it followed immediately the issuance of a sequestration order for all defense witnesses, presumably effective throughout the remainder of the trial. The court in granting the motion relating to the defendant specifically ordered that "the witness is to be sequestered," although the state had requested only that the defendant be ordered "not to talk to his counsel since [the state's attorney was] in the middle of cross-examination."

The cross-examination following the recess consisted of a single question to which the court sustained an objection, although the defendant's negative answer was never stricken. If the testimony of the defendant had then terminated, I would agree with the Appellate Court that the record sufficiently supported a conclusion that the prohibition of communication between the defendant and his client had not resulted in any harm. There was, however, additional questioning on redirect concerning the circumstances of the defendant's arrest, intended to cast doubt upon the identification of the defendant by the police. An extensive recross-examination followed in which the state's attorney attempted to impeach the defendant's version of the arrest as well as his credibility. During this exami-

nation the court remarked to defense counsel upon the defendant's habit of answering a question after his counsel had objected thereto, "[s]o whatever comes out, that's his problem." At counsel's response that he had not had the opportunity to talk to the defendant during the recess when he "could have reminded him at that time," the court conceded the accuracy of that observation.

The recross-examination was followed by additional redirect examination and then by further recross-examination and another brief redirect examination before court adjourned for the day. On the following day the defendant was recalled for redirect examination and was again cross-examined.

Even if the communication ban had clearly been in effect only during the twenty-one minute recess, as the Appellate Court assumed, a highly significant portion of the defendant's testimony followed the recess. This testimony might well have been affected by the absence of any opportunity for the guidance of counsel during the recess. The court's remark about the defendant's propensity to answer questions before his counsel's objection had been ruled upon, which had been evident before the recess, indicates that proper coaching during the recess would have helped the defendant's later testimony. When a defendant testifies at his trial, his credibility is critical and the value of suggestions of counsel during a recess after he has observed his client testify cannot be minimized. There is nothing in the record that I can perceive to support the conclusion of the Appellate Court that the state has sustained its burden of proving the error harmless beyond a reasonable doubt.

Accordingly, I concur in the result.

CALLAHAN, J., dissenting. I agree with the majority that the interference with the defendant's right to

counsel was error. I also agree with Justice Shea's concurring opinion that every such error does not require reversal. In some instances the infringement on the sixth amendment is so minimal as to be harmless beyond a reasonable doubt. This is one of those instances. I would affirm the opinion of the Appellate Court.